**Stephen J. Joncus**, OSB #013072
Email:  stephen.joncus@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

*Attorney for Defendants*
*Canton Phoenix Incorporated*
*and Bing Pan Zhu*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SLEP-TONE ENTERTAINMENT CORPORATION,** | Civil No. 3:14-cv-00764-PK |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **CANTON PHOENIX INCORPORATED,** d/b/a CANTON PHOENIX, and BING PAN ZHU, an individual, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**LOCAL RULE 7-1(a) CERTIFICATION**

Counsel for Defendant and Plaintiff have conferred by telephone. Plaintiff opposes Defendant's Motion to Dismiss.

**INTRODUCTION**

Slep-Tone claims the right to control the public performance of karaoke tracks at the Canton Phoenix establishment. The owner of a copyright has the monopoly right under copyright law to control such a public performance of an audiovisual work. 17 U.S.C. § 106(5). The Complaint has lengthy allegations of supposed illegal copying of Slep-Tone's karaoke tracks. Based on such a description, one might expect that this is a copyright case. To the contrary, Slep-Tone is not asserting any violation of any copyright.

Instead, Slep-Tone asserts various causes of action that are all species of trademark infringement. And therein lies the problem and the basis for this motion. A trademark owner does not have the right to control the public performance of an audiovisual work because no cause of action exists in trademark law for conduct that is traditionally within the bounds of copyright law. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003).

This restriction on the scope of trademark law comes from the U.S. Constitution. Congress' power to grant a copyright is limited in time. U.S. Const. art. I, § 8, cl. 2 ("by securing for **limited Times** to Authors and Inventors the exclusive Right to their respective Writings and Discoveries") (emphasis added). In contrast, trademark rights are perpetual, depending only on continued use of the trademark in commerce. If trademark owners possessed the same monopoly rights existing under copyright law, a trademark would constitute a species of perpetual copyright. Because Congress lacks the power to provide for a perpetual copyright monopoly, no cause of action exists in trademark law for conduct traditionally within the bounds of copyright law.

The right to control the public performance of Slep-Tone's karaoke tracks does not exist in the trademark causes of action asserted by Slep-Tone.  Slep-Tone has not stated a cause of action upon which relief can be granted.

## MOTION

Defendants Canton Phoenix Incorporated and Bing Pan Zhu (collectively "Canton Phoenix") move to dismiss the Complaint filed by Slep-Tone Entertainment Corporation ("Slep-Tone") for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Slep-Tone does not have the right to control the alleged public performance of an audiovisual work under any of its trademark causes of action.

## FACTUAL BACKGROUND

Canton Phoenix Incorporated acquired the Canton Phoenix restaurant and bar located in Tigard, Oregon in 2012.  Among the assets acquired was a computer for karaoke entertainment that has a number of karaoke tracks saved on the hard disk.

A karaoke track is an audiovisual work.  A karaoke track has an audio portion, which recreates an arrangement of a popular song minus the lead vocals, and a video portion, which displays the song lyrics and other graphics.  (Dkt. 1 ¶¶ 30-32.)

Slep-Tone alleges that its mark is displayed during playing of some of the karaoke audiovisual works.  (*Id.*)  Slep-Tone alleges that it is damaged by the playing of its karaoke audiovisual works in public.  (*Id.* ¶¶ 47, 55-60.)

## ARGUMENT

### I.    TRADEMARK LAW MAY NOT BE OVER-EXTENDED INTO AREAS TRADITIONALLY OCCUPIED BY COPYRIGHT LAW

In *Dastar*, the Supreme Court cautioned against "misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." 539 U.S. at 33-

34 (quotations omitted); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) (holding that the functional aspects of an article covered by an expired utility patent could not support a trade dress claim); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) (invalidating a state unfair competition law that provided patent-like protection).

### A. Copyright Law Trumps Trademark Law In The Protection Of The Intellectual Content Of Creative Works

The facts of *Dastar* are as follows:  In 1948, General Dwight D. Eisenhower published his World War II memoirs, *Crusade in Europe*.  539 U.S. at 25.  Doubleday, the publisher, licensed the exclusive television rights to Twentieth Century Fox.  *Id.*  Fox arranged for the production of a television series of the same name.  *Id.* at 26.  But Fox failed to renew the copyright to the television series and its copyright lapsed in 1977, "leaving the television series in the public domain."  *Id.*  Fox reacquired the television rights in the book in 1988, and arranged for the production and distribution of the series on videotape.  *Id.*  The "*original* version of the *Crusade* television series," however, remained in the public domain.  *Id.* (emphasis in original).  Dastar Corp. later acquired tapes of the original television series; copied, edited, and abridged them; and sold the resulting videos, with no mention of Fox.  *Id.* at 26-27.  Fox then sued Dastar under the Lanham Act.  *Id.*

The *Dastar* opinion emphasizes the preeminence of the public domain.  Absent the monopoly right granted under copyright law, no other law prevented the public to use the work.  *Id*. at 33-34 ("[o]nce the patent or copyright monopoly has expired, the public may use the invention or work at will….").  Absent a copyright, the public has a "federal right to copy and to use."  *See id.* (citing *Bonito Boats*, 489 U.S. at 165 (1989)).  To interpret trademark law as extending to cover a right within the copyright monopoly would "create a species of mutant copyright law that limits the public's federal right to copy and use expired copyrights."  *Id*.

DEFENDANTS' MOTION TO DISMISS
4

The public's "federal right to copy and to use" a work that is not under copyright protection is based on the U.S. Constitution.

### B. The Public's Right To Use Is Guaranteed By The U.S. Constitution

Congress' power to confer a copyright monopoly is limited. Congress may grant monopoly rights under the copyright law only "for limited Times." U.S. Const. art. I, § 8, cl. 8. *See also Bonito Boats*, 489 U.S. at 146 ("[T]he Clause contains both a grant of power and certain limitations upon the exercise of that power.").

In contrast, trademark rights can last indefinitely—as long as the trademark is used in commerce. *See e.g., Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65 (1995). ("[T]rademarks may be renewed in perpetuity.").

Under the Constitution, Congress does not have the power to create "a species of perpetual patent and copyright" through enactment of trademark laws. *Dastar,* 539 U.S. at 37. Thus, it would be unconstitutional for a limited duration monopoly right in copyright law to also exist as a perpetual right under trademark law.

As the Supreme Court pointed out, even if Dastar's creative works caused consumer confusion, such confusion was not actionable under trademark law, because of the conflict with copyright. *See id.* at 34 (declining to "create a species of mutant copyright law"); *see also KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 121-22 (2004) (noting, in the trademark fair use context, that trademark law "tolera[tes] . . . a certain degree of confusion on the part of consumers" where the rights of the public are at stake).

### C. *Dastar* Has Been Construed Expansively To Protect Copyright Law

Even before *Dastar*, the Ninth Circuit and other Courts of Appeals refused to countenance "expedition[s] of trademark protection squarely into the dominion of copyright law." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000) (affirming

DEFENDANTS' MOTION TO DISMISS

5

dismissal of a Lanham Act claim to "a piece of footage taken directly from a [public domain] film by The Three Stooges"); *see also EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) (holding that a musical composition could not serve as a trademark for itself); *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001) (holding that "the recording of [an artist's] signature performance" could not serve as a trademark for the artist).

The Ninth Circuit has applied *Dastar* broadly—just how broadly is illustrated in *Sybersound Records v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008). There, the plaintiff alleged that defendants misrepresented that their karaoke tracks were properly licensed, that copyright royalties were paid, and that this constituted unfair competition.[1] *Id.* at 1143. The court followed the reasoning in *Dastar* "to avoid overlap between the Lanham and Copyright Acts," and declined to "[construe] the Lanham Act to cover misrepresentations about copyright licensing status." *Id.* at 1144. The court reasoned that reading the Lanham Act to cover such conduct would impermissibly "allow competitors engaged in the distribution of copyrightable materials to litigate the underlying copyright infringement when they have no standing to do so because they are nonexclusive licensees or third party strangers under copyright law." *Id.*; *see also PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 n.2 (9th Cir. 2010) (citing same with approval). Accordingly, the Ninth Circuit affirmed the dismissal of plaintiff's complaint for failure to state a claim. *Sybersound*, 517 F.3d at 1142, 1144.

*Sybersound* illustrates the applicability of principles of *Dastar* to different fact patterns. *Sybersound* did not involve the attempted substitution of trademark law for a monopoly right

---

[1] To be clear, the fact that *Sybersound* also involves karaoke music is not the reason *Sybersound* is important. *Sybersound* is pertinent because it illustrates the broad reading of *Dastar* by the Ninth Circuit.

DEFENDANTS' MOTION TO DISMISS
6

under copyright law as in *Dastar*. In a different fact pattern, *Dastar* precluded the use of trademark law to cover misrepresentations about copyright licensing status.

However, the facts in this case are closer to *Dastar* than the *Sybersound* facts. Like in *Dastar* itself, Slep-Tone is attempting to substitute trademark law to assert a monopoly right existing in copyright law.

## II.     PLAINTIFF HAS NOT STATED A CLAIM

### A.     The Tracks At Issue Were Made By Slep-Tone

The root of the problem, according to the Complaint, are karaoke tracks on Canton Phoenix's machine that display the Sound Choice trademark when played. But, it was Slep-Tone that put the Sound Choice mark in their tracks. Slep-Tone does not allege that someone else recorded karaoke tracks and marked them with the Sound Choice trademark. Slep-Tone alleges that karaoke tracks existing on the computer at Canton Phoenix originated with Slep-Tone. (*See* Dkt. 1 ¶¶ 36-54) (alleging how Slep-Tone karaoke tracks were pirated and distributed). That is, Canton Phoenix allegedly has karaoke tracks that were produced, recorded, and mastered by Slep-Tone. Copies of tracks produced, recorded, and mastered by Slep-Tone do not merely look and sound like Slep-Tone's tracks; they are not imitations of Slep-Tone's tracks; they *are* Slep-Tone's tracks.

### B.     Slep-Tone Misuses The Term "Counterfeit"

Slep-Tone attempts to give trademark flavor to its allegations by labeling these tracks as "counterfeit." (*See*, Dkt. 1 ¶¶ 1, 42, 45-47, 50, 52-57, 60, 63, 66, 78, 79, 84, and 95.) Slep-Tone misuses the term "counterfeit," as illustrated by the distinctions drawn in *Microsoft Corp. v. Action Software*, 136 F. Supp. 2d 735 (N.D. Ohio 2001).

Two kinds of software were at issue in *Action Software*: counterfeit software (software that Microsoft did not manufacture, but which appeared to be and was held out to be Microsoft

merchandise), and unauthorized copies of Fulfillment software (software manufactured by Microsoft intended for business customers with a pre-existing volume license that allowed the business to install Microsoft software on all of its computers but was not authorized for resale). *Id*. at 736.  At times Microsoft referred to both types of software as "counterfeit."  The court took exception to the unauthorized copies of Fulfillment software being labeled as "counterfeit."

> Microsoft has, at times, alleged that any software . . . that Microsoft does not authorize for sale, is "counterfeit" software—even though that software was actually created and manufactured by Microsoft.  The Court defines "counterfeit" more narrowly, using its dictionary definition; "counterfeit" properly is that which is "made in imitation with intent to deceive."  In other words, counterfeit software meant to look and perform like Microsoft software, but not actually designed, manufactured or created by Microsoft.

*Id*. at 738 n.2 (quoting *Random House College Dictionary* 306 (1st ed. 1980)).

The tracks alleged to be on Canton Phoenix's machine are not counterfeit, just like the unauthorized copies of Microsoft's Fulfillment software are not counterfeit.  Counterfeits are imitations of the real thing made to deceive consumers into believing that they are the real thing, such as a CARTIER mark on "fake CARTIER watches made with inferior parts," or a LEVI'S mark on "imitation LEVI's jeans [that] may fall apart after one washing."  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:10 (4th ed. 2013).  If someone other than Slep-Tone had recorded a karaoke track and put the Sound Choice mark on the tracks—that would be a counterfeit—an imitation of the real thing made to deceive customers into believing that it is the real thing made by Slep-Tone.  A copy (no matter how degraded) of a karaoke track produced, recorded, and mastered by Slep-Tone is not a counterfeit.  It was actually created and manufactured by Slep-Tone.

This case does not involve imitations of Slep-Tone's tracks on which someone placed the Sound Choice trademark. As its complaint makes clear, Slep-Tone asserts that these are karaoke tracks made by Slep-Tone.

### C. The Alleged Bad Act Is Public Display Of An Audiovisual Work

All of Slep-Tone's allegations of bad acts boil down to one thing—alleged customer confusion that occurs when Canton Phoenix plays Slep-Tone's karaoke tracks in public. According to Slep-Tone: Canton Phoenix "regularly utilized" or "used" Slep-Tone's tracks (Dkt. 1 ¶ 55, 57); Canton Phoenix "provide[s] karaoke entertainment services to or for the benefit of their customers" (*id*. at ¶ 56); and Canton Phoenix "presented" Slep-Tone's tracks (*id*. at 59).[2]

Each of the alleged acts amount to playing a karaoke track in public. In other words, the alleged wrongful act is public performance of an audiovisual work.

### D. Public Display Of Slep-Tone's Tracks Is Not Actionable In Trademark Law

Whether one may publicly display an audiovisual work is a monopoly right held by the owner of a copyright. 17 U.S.C. § 106(5) ("[T]he owner of copyright under this title has the exclusive rights to do and authorize any of the following: . . . in the case of . . . audiovisual works, to perform the copyrighted work publicly…."). Because this monopoly right exists in copyright law, it cannot also exist in trademark law. *Dastar*, 539 U.S. at 33-34. "To hold

---

[2] Slep-Tone also alleges that Canton Phoenix possesses Slep-Tone's tracks. (Dkt. 1 ¶¶ 55, 57.) But these allegations provide no support for its trademark infringement claims—customers cannot be confused if Canton Phoenix merely possesses Slep-Tone's tracks and does not perform them publicly. Slep-Tone also alleges that Canton Phoenix "promoted providing karaoke services." (*Id*. at 58.) This allegation also does not support a trademark infringement claim—there is no claim that the "promotions" utilized any trademark.

DEFENDANTS' MOTION TO DISMISS
9

otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* at 37.

Slep-Tone's allegation that Canton Phoenix played its karaoke tracks in public does not support an action in trademark infringement. Indeed, unless Slep-Tone has a valid copyright in Slep-Tone's karaoke tracks, they are in the public domain, and Canton Phoenix has a federal right to freely play Slep-Tone's karaoke tracks. *See id.* at 33 ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."); *id.* at 34 (holding the public has a "federal right to copy and to use" items not protected by copyrights).

### E. Slep-Tone's Trademark Rights Are Not Vitiated

Canton Phoenix is not asserting in this motion that Slep-Tone lacks trademark rights in the Sound Choice mark. The mark may be invalid, but that is not the basis of this motion.

Assuming that Slep-Tone trademarks are valid, if Canton Phoenix were to make a banner using the Sound Choice mark to advertise karaoke, that would violate Slep-Tone's trademark. If Canton Phoenix made a CD containing Slep-Tone tracks and put the Sound Choice mark on the label of the CD, that label would violate Slep-Tone's trademark. If Canton Phoenix recorded its own karaoke music and video, and inserted the Sound Choice mark into the video, that would violate Slep-Tone's trademark.

But what Slep-Tone cannot do with its trademark is control the public performance of Slep-Tone karaoke tracks.

### III. ALL OF SLEP-TONE'S CAUSES OF ACTION FALL WITH ITS TRADEMARK CLAIM

In addition to its first claim for relief for trademark infringement, Slep-Tone brings three additional independent causes of action: federal law unfair competition, state trademark law, and

DEFENDANTS' MOTION TO DISMISS
10

common law passing off.[3]  (Dkt. 1 ¶¶ 73-90.)  However, these three additional causes of action are species of the trademark infringement claim because "federal and state statutory claims for trademark infringement and unfair competition, as well as their related common law claims, all require proof that there is a likelihood of confusion."  *Newport Pac. Corp. v. Moe's Sw. Grill, LLC*, No. 05-995-KI, 2006 WL 2811905, at *11 (D. Or. Sept. 28, 2006); *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) ("The elements of infringement and unfair competition claims are essentially the same; the rulings stand or fall together."); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) ("The federal cause of action for false designation created by section 43(a) encompasses the common law action for passing off.").[4]

Each of these three additional claims is based on the alleged public performance of Slep-Tone's audiovisual work.  For the same reasons as explained above, none of the causes of action can extend to cover a public performance of an audiovisual work because that is a right that is exclusively within the bounds of copyright law.  *See Dastar*, 539 U.S. at 33-34.  Slep-Tone has failed to state a claim under which relief can be granted for any cause of action.[5]

---

[3] Slep-Tone's Fifth Claim for Relief recites Oregon Revised Statute sections 20.080 and 20.082 which govern the award of attorneys' fees for certain state law claims. (Dkt. 1 ¶¶ 91-94.)  This is not an independent cause of action—it relies on a finding of liability for trademark infringement.

[4] *See also* Restatement (Third) of Unfair Competition § 4 (1995) ("One is subject to liability . . . [for passing off if,] in connection with the marketing of goods or services, the actor makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the actor's business is the business of the other, or that the actor is the agent, affiliate, or associate of the other, or that the goods or services that the actor markets are produced, sponsored, or approved by the other.").

[5] Slep-Tone is likely to argue that the Court should deny this motion because of Judge Coffin's Findings and Recommendation denying the "*Dastar*" motion filed in *Slep-Tone v. Duffy's Irish Pub*, 13-cv-00560-TC, Dkt. 29 (D. Or. Sept. 18, 2013) which was adopted, *id*. at Dkt. 40.  Judge Coffin's decision is not controlling.  *See e.g*., *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 4578 n.13 (9th Cir. 1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another").

The Court's dismissal should be with prejudice because any attempt by Slep-Tone to replead a cause of action for trademark infringement would be futile. *Deutsch v. Turner Corp.,* 324 F.3d 692, 718 n.20 (9th Cir. 2003) (affirming denial of leave to amend on the basis of futility). All of Slep-Tone's trademark claims are precluded by *Dastar* as a matter of law.

## IV. THE COURT SHOULD DISCOUNT SLEP-TONE'S CLAIM OF VICTIMHOOD

This motion—and this suit—would raise obvious questions in any reader's mind about what is really going on. In view of Slep-Tone's lengthy allegations of unauthorized copying of its karaoke tracks, why is Slep-Tone suing for trademark and not copyright infringement? Is not Slep-Tone really a victim? Indeed, Slep-Tone's Complaint weaves an enticing story painting Slep-Tone as the victim of thieves who stole its products and killed its business. (Dkt. 1 ¶¶ 21-54.)

There is another side to the story. Slep-Tone could have protected itself by registering for copyright protection—but it did not. Copyright registration offers powerful protection to owners of a copyright, but Slep-Tone failed to avail itself of the law designed to protect the audiovisual works it produced. Any damage to its business has been a result of Slep-Tone's own business decisions not to protect itself under the copyright law designed for that purpose.

Canton Phoenix is not a thief. It bought a restaurant and bar that already had a karaoke machine. Slep-Tone does not allege that Canton Phoenix copied or sold copies of Slep-Tone's karaoke tracks or did anything else that might be construed as stealing from Slep-Tone. The only act alleged to give rise to liability is the public performance of Slep-Tone's karaoke tracks. As shown above, that act is not actionable under trademark law.

In contrast to the tale proffered in Slep-Tone's Complaint, Canton Phoenix is one of the many victims of Slep-Tone. Slep-Tone is now known for filing shakedown suits against parties

that cannot afford a vigorous defense. Slep-Tone's theory in all of these cases is trademark infringement. Slep-Tone has stipulated elsewhere that it has sued more than 100 entities across the country for trademark infringement. This is the third case in which I have represented Oregon targets of Slep-Tone—all on a *pro bono* basis.[6]

The nature of Slep-Tone's shakedown suits has been aptly described by CAVS USA, Inc., a prominent manufacturer of karaoke machines. CAVS USA sued Slep-Tone for RICO violations and tortious interference, in part, because Slep-Tone's shakedown lawsuits were targeting customers of CAVS. That lawsuit settled in December 2013 with Slep-Tone paying CAVS $375,000.[7] CAVS' filings in that suit reveal a much different picture of of Slep-Tone.[8] An accurate depiction of the story behind this case is not found in Slep-Tone's Complaint. Canton Phoenix has done nothing wrong, yet it has been targeted by Slep-Tone's litigation machine.

Notwithstanding the conflicting narratives of the parties, the claims against Canton Phoenix should be dismissed based on the application of the law to Slep-Tone's Complaint. Under the law, Slep-Tone has failed to state a claim on which relief can be granted.

## V.    CONCLUSION

Slep-Tone has no right in trademark law to control the public performance of its audiovisual works. Slep-Tone's assertion of trademark causes of action fail to state a claim upon which relief can be granted. The Court should dismiss Plaintiff's First Amended Complaint.

---

[6] I was appointed under the District of Oregon's *pro bono* program as counsel for the defendants in *Slep-Tone v. Duffy's Irish Pub*, 13-cv-00560-TC (D. Or.) and *Slep-Tone v. Shea Family Corp.*, 13-cv-00862-TC (D. Or.). The court did not appoint me in this case, but Canton Phoenix is similarly unable to afford a vigorous defense.

[7] *See* http://www.cavsusa.com/newsletter/20140120_newsletter.htm.

[8] *See* Ex. 1 pp. 2-6. Ex. 1 is Dkt. 56 filed in *Slep-Tone v. Shea Family Corp.*, 13-cv-00862-TC (D. Or.).

Respectfully submitted,

Dated: July 3, 2014    By:    s/Stephen J. Joncus
**Stephen J. Joncus**, OSB #013072
Email: stephen.joncus@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

*Attorney for Defendant*
*Canton Phoenix Incorporated*
*and Bing Pan Zhu*