Carl D. Crowell, OSB# 982049
E-Mail: carl@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
503-581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SLEP-TONE ENTERTAINMENT CORPORATION**, | Case No.:  3:14-cv-00764-PK |
| Plaintiff, | PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| v. | |
| **CANTON PHOENIX INCORPORATED**, d/b/a **CANTON PHOENIX**, and **BING PAN ZHU**, an individual,, | |
| Defendants. | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS.

**I.    BACKGROUND**

Plaintiff Slep-Tone Entertainment Corporation ("plaintiff" / "Slep-Tone") manufactures

and distributes karaoke discs sold under the registered Sound Choice® trademarks.  In playback,

plaintiff's products display the Sound Choice® marks in association with plaintiff's goods and

services prior to and at the conclusion of the audiovisual portions of the presented karaoke tracks

and in some tracks during interludes.  As per plaintiff's complaint, and as evidenced by the

activity in this district and nationwide, piracy and counterfeiting of plaintiff's products is rampant.

Defendants Canton Phoenix, Incorporated and Bing Pan Zhu ("Canton" / "Defendants") own and operate a restaurant and bar located in Tigard, Oregon that provides karaoke entertainment.  In 2012 and 2013 defendants initiated contact with plaintiff to discuss a possible license for use of Sound Choice products, started paperwork, but never completed any purchase or license agreement.  Subsequently plaintiff's investigator discovered defendants were providing karaoke entertainment for customers using unauthorized counterfeit Sound Choice® branded karaoke accompaniment tracks and repeatedly displaying plaintiff's registered Sound Choice® trademarks in association with karaoke services, all after express notice and refusing to purchase a license.  Further investigations revealed defendants to be using a library of over 24,000 counterfeit karaoke tracks, each branded with Plaintiff registered trademarks.  Plaintiff has been forced to bring this claim to protects its rights in the face of blatant, persistent, recalcitrant infringement.

Defendants now respond with a Motion to Dismiss (Dkt. 13), asserting plaintiff has failed to state a claim upon which relief can be granted arguing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) should be read to negate plaintiff's registered trademark rights. For the reasons discussed below, and as per the findings in two prior cases before the Oregon District Court on this *exact issue*, as well as in accord with the determinations of other courts, plaintiff's claim is properly framed in enforcing its legitimate trademark rights.  *Slep-Tone v. Shenanigans*, 6:12-cv-01236, Dkt. 80, (D. Or. Feb. 22, 2013), adopted by Judge Aiken *Id.* at Dkt. 91; *Slep-Tone v. Duffy's Irish Pub*, 13-cv-00560-TC, Dkt. 29, (D. Or. Sept. 18, 2013), adopted by Judge Aiken,  *Id.* at Dkt. 40 (Note, same counsel); *Slep-Tone Entm't Corp. v. Coyne, et al.*,

1:13-cv-2298, (N.D. Ill., May 8, 2014); *Slep-Tone v. Luke F. and Kim Arrowood, et al*, 2:10-cv-00592-MHW-TPL, Doc. 80 (S.D. Ohio, Sept. 6, 2011); See also, *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.,* 11-4258, 2013 WL 827700 (6th Cir. 2013*); Slep-Tone Entm't Corp. v. Johnson*, 518 F.Appx. 815 (11th Cir., 2013) .

## II.    LEGAL STANDARD

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

## III.    ARGUMENT

### A.  Plaintiff Has A Proper Trademark Claim

To succeed on a claim of trademark infringement, plaintiff must demonstrate (1) ownership of a valid trademark and (2) likelihood of confusion from defendant's use of the mark. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1354 (9th Cir. 1985).

### a)  Plaintiff is the registered owner of the Sound Choice® trademarks.

Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448 (Goods, Intl. Class 9) and No. 4,099,045 (Service, Intl. Class 41) for the wordmark SOUND CHOICE. Complaint, Dkt. 1, ¶ 11. Slep-Tone is the owner of U.S. Trademark Registration No. 2,000,725 (Goods, Intl. Class 9) and No. 4,099,052 (Service, Intl. Class 41) for a display trademark as follows:



*Id.* at ¶ 12.  Slep-Tone is the owner of the registered trademark SOUND CHOICE, registered

with the State of Oregon, Reg. No. 42,675, pursuant to ORS §§ 647.005, et seq.  *Id.* at ¶ 13.

Slep-Tone has, for the entire time its marks have been registered, provided the public, including

defendants, with notice of its federal registration through the consistent display of the symbol ®

with its marks as used on goods sold.  *Id.* at ¶ 14.  Ownership is clearly established in the

complaint.

      **b)  Defendants' use of the Sound Choice® trademark is likely to cause**

         **confusion.**

     "The test for likelihood of confusion is whether a reasonably prudent consumer in the

marketplace is likely to be confused as to the origin of the good or service bearing on the marks."

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).  Plaintiff has

clearly alleged a likelihood of confusion (¶ 69) and has provided significant factual basis for

such confusion.  Complaint, *passim*.  As such, plaintiff has sufficiently plead a likelihood of

confusion.

     This is not a case of a similar mark or a related field.  In this case plaintiff has registered,

incontestable, strong and well-established marks.  Defendants' use is of identical marks being

used in an identical way, for nearly identical goods.  Complaint, ¶ 55-60.  To discount confusion

would imply that consumers are implicit accomplices willfully participating in unlicensed

activity and sets a standard for society to presume purveyors of goods and services are

unlicensed or working with counterfeits.   In light of the factors of *AMF, Inc. v. Sleekcraft Boats*,

599 F.2d 341 (9th Cir. 1979), confusion must be presumed in an instance of a counterfeit marks

such as this. *Phillip Morris USA Inc. v. Shalab*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004).

Because consumer confusion must be presumed and has arisen from defendants' unlicensed use

of plaintiff's trademarks, plaintiff's claim of trademark infringement should stand and

defendants' motion to dismiss should be denied.

### B.  This Is Not A Copyright Case

Defendants attempt to re-cast plaintiff's claim by arguing the real nature of plaintiff's

complaint is one in copyright and trademark law cannot be extended to "the public performance

of an audiovisual work". Dkt. 13, p. 2.  Defendants further claim the "tracks" used by

defendants are not counterfeits, but in fact "crated and manufactured by Slep-Tone." Dkt. 13, p.

8. Both of these claims fail and are contrary to fact and law.

### a)  Plaintiff's goods and services are protected by trademarks.

Defendants' arguments that trademark law cannot extend to a performance of an

audiovisual work fail for a number of reasons.  First, there is no prohibition or exclusion of

audiovisual works from trademark protection.  There is a specific class of registration, Class 41,

for entertainment services, which includes "… in particular…presentation of works of visual art

or literature to the public for cultural or educational purposes." Trademark Manual of

Examining Procedure ("TMEP"),  §1401.02(b).  To advocate that trademarks cannot apply to an

audiovisual work would argue against an entire class of well established trademarks.

This issue has been directly addressed by the courts.  The recognition of non-exclusive

dual coverage and applicability of trademark protection to copyrightable subject matter is well

established.  Not only is dual protection allowed, but courts also permit dual recovery even when

the infringement is with a single act. *Microsoft v. Evans*, 2007 U.S. Dist. LEXIS 77088 (E.D.

Cal. Oct. 16, 2007) (Allowing dual recovery for copyright and trademark.)  *Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir. 1994) cert. denied, 515 U.S. 1107 (1995), (Actual damages under Lanham Act and statutory damages under Copyright Atc.); *Symantec Corp. v. Cd Micro, Inc.*, 286 F.Supp.2d 1278, 1282 (D. Or., 2003) (Statutory Copyright Act damages and trebled trademark damages are not a double recovery.)

In cases dealing directly with video content, liability for both trademark and copyright infringement has been found proper in the Ninth Circuit even when subject matter is copyrighted video clips that contain a trademark, "which appears in the top right-hand corner of all of its programs." *Bangkok Broad. & T. V. Co., v. IPTV Corp.* 742 F.Supp.2d 1101, 1106 (C.D. Cal., 2010) affd. *Bangkok Broad. & T.V. Co. v. IPTV Corp.* (9th Cir., Dec. 11, 2013, unpublished); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 721 (9th Cir., 2004) ("In response to Timex's unauthorized use of footage from [Polar Bear's] copyrighted film, Polar Bear brought state and federal copyright and trademark claims…Polar Bear may proceed with its state law trademark claim.").   "The Copyright Act does not preempt related state [trademark] laws if the state laws 'protect rights which are qualitatively different from copyright rights....'" *Id.*, quoting *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir.1989).   In the instant case a key right sought to be enforced relates to trademarks, origin of goods, and the impact of consumer confusion, which is not subject to copyright protection.

The law is clear, copyright and trademark rights are not mutually exclusive fields wherein one exists to the exclusion of the other.   A single act of infringement can give rise to concurrent liability and recoveries under both the Copyright Act and the Lanham Act.  *Symantec Corp.* at 1282.   That the content might be an audiovisual work does not abrogate trademark rights. *Bangkok Broad. & T. V. Co.* at 1106.

### b)   Defendant's goods and services are unauthorized and counterfeit.

An arguments that defendants' goods and services are not counterfeit and instead "created and manufactured by Slep-Tone" is at best a factual issue that might be subject to dispute, but presently fails in the pleadings before the court.  As defendants' state in their motion, defendants posses "a number of karaoke tracks saved on the hard disk."  Dkt. 13, p 3. As per plaintiff's complaint, plaintiff does not sell hard disks, but instead sells its products on compact disks.  Complaint, ¶ 29.  And while plaintiff may at times authorize media shifting of licensed legitimate compact disks to a medium such as a hard drive, this is not what defendants have done. Complaint, ¶ 55-57.  Defendants do not play, and at the time of filing of plaintiff's complaint did not have discs for their 24,000+ songs at issue[1], much less copies of disks, as defendants purchased and used a "hard disk," *not* compact discs, to play the product which bears plaintiff's marks.

To the extent plaintiff's product is digital and might be considered software that can be digitally replicated, nothing precludes a trademark claim for counterfeit software.  Defendant's reliance on *Microsoft Corp. v. Action Software*, 136 F. Supp. 2d 735 (N.D. Ohio 2001) is misplaced.  In *Action Software*, the claims related to authorized software physically manufactured by Microsoft still "wrapped in plastic in a jewel case, with Microsoft labeling" that was used beyond its license.  *Id.* at 738.  Use of an actual Microsoft manufactured disc beyond the license does not convert a legitimate and authorized product into a counterfeit.  In the instant case, plaintiff manufactures and sells Compact Disks for providing karaoke services.  Defendant had no discs.  Just because a product is digital, even if perfectly reproduced, does not mean it

---

[1] Plaintiff is informed that since the filing of this complaint defendants have purchased a limited number of used grey market Slep-Tone disks from third parties in an attempt to claim rights in some of their songs, but still fall far short of having original disks to account for the 24,000+ tracks believed to be on their system.

RESP. TO MOTION TO DISMISS                                                                    Page 7

cannot be counterfeited. *Symantec Corp. v. Cd Micro, Inc.*, 286 F.Supp.2d 1278 (D. Or., 2003) (Copies of plaintiff's software produced by unauthorized replicators subjected defendants to liability for copyright infringement, trademark infringement, unfair competition under the Lanham Act, and trademark counterfeiting.)  Whatever may be on defendants' hard drive, it is neither manufactured by, put there by, nor authorized by plaintiff.  And as an imitation, or even a duplicate of plaintiff's product, when presented with plaintiff's trademarks it is a counterfeit. *See* 18 U.S.C. §2320.

### C)  This Is Not A *Dastar* Case.

Courts in the District of Oregon and elsewhere have already held: "…*Dastar* does not apply…" to Slep-Tone's claims.  *Slep-Tone v. Shenanigans*, 6:12-cv-01236, Dkt. 80, (D. Or. Feb. 22, 2013).  However defendants attempt to stretch *Dastar* and try to shoehorn plaintiff's claims into a *Dastar* exclusion.   For the reasons argued below the prior rulings of other judges in this district and across the country should stand and defendants' *Dastar* argument should be rejected.

Defendants rely on *Dastar* to support two main points:  1) Copyright law trumps and excludes trademark law; and 2) Constitutional limitations to trademark law impact this case. However neither *Dastar*, the law, nor any other cases support these points.  As argued below the facts in *Dastar* are not analogous to the facts in the present case not are the legal tenets of *Dastar* on point.

### a)  The facts of *Dastar* do not match this case.

*Dastar* and its sister cases are about attempts to remove or re-claim material from the public domain, which has nothing to do with this case.  As reviewed in defendants' motion, *Dastar* involves versions of a WWII video production.  Key in *Dastar* is that *the relevant video*

*was in the public domain*. *Dastar*, 539 U.S. at 26.  Dastar purchased tapes of the *original* series, which were in public domain, copied them, edited them to about half their original length, repackaged them, and sold them as Dastar's own product.  *Id.* at 26-27.  Fox then sued under the Lanham Act because under copyright, Dastar was free to copy the *original public domain tapes*. *Id.*  But Fox was not suing for the misappropriation of any trademarks as *Dastar* had edited all trademarks out.  Fox's claim related to reverse passing off, namely Fox objected to Dastar branding the public domain video as a Dastar product.  The *Dastar* court declined to create a mutant perpetual copyright through trademark and permit Fox to claw back under trademark law what had already been ceded to the public under copyright.

Had defendants in this case copied public domain source music produced by plaintiff and repackaged it and sold it as "Canton's Karaoke" with their own trademarks and branding with claims they were the source of the goods and services, then the present case would be a *Dastar* case, but they did not.  The defendants used counterfeit copies of tracks *not* in the public domain bearing plaintiff's marks to provide goods and services in commerce that for all intensive purposes appeared to be legitimate and licensed by plaintiff.

Defendants put forth great effort to analogize *Dastar* with the present case, however this is not about copying something in the public domain.  Plaintiff's case is about passing off.  Nothing in plaintiff's claims is against defendant's use of the underlying songs or copyrightable subject matter.[2]  Plaintiff's claims relate to the presentation of trademarks associated with the use of the subject karaoke tracks and services.  Nothing in plaintiff's claims would foreclose anyone from using anything in the public domain.

---

[2] Contrary to defendants' unsupported allegations, Slep-Tone and its affiliates are in fact the registered owners of a large number of copyright registrations covering the derivative content in possession of defendants.  However, it is likely motions against copyright claims by plaintiff would be even more convoluted and burdensome.

**b)    Plaintiff Is Not Seeking To Extend Copyright Protection**

*Dastar* and related cases focus on the resolution of conflicts between forms of intellectual

property protection.  It is well established that when the public acquires rights from an expired

patent or copyright, other schema, such as trademark, cannot be used to reclaim what was ceded

to the public. *Dastar, passim; TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23

(2001).   However, defendant now attempts to turn *Dastar* on its head and use a claim of

copyright preemption to negate trademark law when there is no conflict to resolve.  To accept

defendants' overbroad application of *Dastar* would negate trademark protection where there was

any colorable claim of copyright or patent, independent of whether such rights had expired.

Plaintiff is not seeking to enforce the copyrights of nearly 24,000 songs used by

defendants or reclaim something ceded to the public.  Further, there is no claim that the

copyrights for the songs at issue have expired.  Plaintiff Slep-Tone licenses music from the

music copyright holders, re-packages it, creates accompanying video with the words and a

manner of allowing customers to sing along, and then sells the product as a new licensed and

Sound Choice® branded product. While plaintiff may own copyrights in derivative works,

plaintiff does not own, nor does it claim to own copyrights for the source works featured in its

products.[3]

There is no conflict between plaintiff's rights and the rights in the public domain as

plaintiff is not attempting to keep people from using the source songs.  Plaintiff is suing because

defendants are using counterfeit products and passing off counterfeit goods and services as

Sound Choice® branded goods and services, using the Sound Choice® marks.

---

[3] Defendants' at one point make the surreal argument that, "unless Slep-Tone has a valid copyright in Slep-Tone's
karaoke tracks, they are in the public domain…"  Dkt. 13, p. 10.  It approaches an issue of judicial notice that almost

RESP. TO MOTION TO DISMISS                                                               Page 10

### c)  Constitutional Issues Are Not Implicated

There is no constitutional limitation of rights in this case.  Whether *Dastar, TrafFix Devices*, or *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989) are relied on to resolve a conflict between laws, there must first be a conflict.  As argued above, there is no implication that *any* other law or right ceded to the public (under the Constitution or otherwise) is not given full force and effect with plaintiff's enforcement of its registered trademarks.  There simply is no conflict to resolve nor constitutional issue to be determined.

### d)  Other courts have declined to apply *Dastar* to Slep-Tone's claims.

Defendants note that they are aware of another ruling in this District, *Slep-Tone v. Duffy's Irish Pub*, 13-cv-00560-TC, Dkt. 29, (D. Or. Sept. 18, 2013), but this barely scratches the surface of the many cases cited above. It is not just a single prior ruling in this district argued by the same counsel no less that goes against defendants, but <u>no other court in over 100 cases has found Slep-Tone's claims precluded by *Dastar*</u>. Slep-Tone's trademark claims have even been appealed to both the Sixth Circuit Court of Appeals and Eleventh Circuit Courts of Appeals without being barred by *Dastar*.  *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.,* 11-4258, 2013 WL 827700 (6th Cir. 2013*)*; *Slep-Tone Entm't Corp. v. Johnson*, 518 F.Appx. 815 (11th Cir., 2013).

### e)  The facts in *Sybersound* are not analogous with the present case.

Defendants try to expand *Dastar* by arguing *Sybersound Records, Inc. v. UAV Corporation*, 517 F.3d 1137 (9th Cir. 2008).  *Sybersound* is inapplicable to the instant case except that it references both karaoke and *Dastar*.  *Sybersound* deals with a non-exclusive licensee's attempt to impermissibly enforce copyrights on behalf of third-parties.  Sybersound's claims

---

none of the more than 100 tracks on defendants' hard drive which comprise Elvis songs are in the public domain

would have required the court to determine the predicate infringement claim between the defendant and the non-party actual copyright holder, something for which Sybersound lacked standing. As Judge Coffin found: "The Ninth Circuit's ruling in *Sybersound Records, Inc. v. UAV Corp.* is not on point with this case." *Slep-Tone v. Duffy's Irish Pub*, 13-cv-00560-TC, Dkt. 29, p. 5. For this case to be transformed into a *Sybersound* type case plaintiff would need to bring claims related to the over 60,000 other non-Sound Choice® branded songs on defendants' hard drive, all presumably pirated bootlegs and used without license. Slep-Tone's claims relate to defendants' improper use of Sound Choice® trademarks in commerce and no copyrights are at issue.

### D. Plaintiff Has Marks for Goods <u>And</u> Services

*Dastar* arguments aside, it must be noted that there are at least four trademarks implicated in plaintiff's complaint: (1) U.S. Trademark Registration No. 1,923,448 (Goods, Intl. Class 9.) and (2) No. 4,099,045 (Service, Intl. Class 41) for the wordmark SOUND CHOICE; and (3) U.S. Trademark Registration No. 2,000,725 (Goods, Intl. Class 9.) and (4) No. 4,099,052 (Service, Intl. Class 41) for a specific logo. While defendants may be able to massage some facts with respect to the goods of the parties and stretch and squeeze *Dastar*, specifically with respect to Mark Registration Nos. 1,923,448 and 2,000,725, arguing that these "goods" represent nothing more than songs protected only by copyright,[4] plaintiff's claims extend well beyond mere "tracks" or the display of video. Plaintiff's marks also apply to the "service" of "Conducting entertainment exhibitions in the nature of karaoke shows" as protected by Registration Nos. No. 4,099,045 and 4,099,052.

---

independent of any copyrights held by Slep-Tone.

RESP. TO MOTION TO DISMISS                                                    Page 12

Plaintiff's claims do not require defendants to use counterfeits or third party "media-shifted" or "format-shifted" copies of plaintiff's discs. Defendants' providing the service of "karaoke shows" presented in association with plaintiff's registered trademarks is independently actionable and does not touch on copyright even under defendants' broadest arguments.

### E.  Plaintiff's Remaining Claims Are Valid and Proper

Claims for unfair competition, state trademark law, common law passing off, and plaintiff's associated ORS 20.080 (and 20.082 should defendants' choose to raise certain possible defenses) are all proper and valid. Such claims are proper in for the use of unlicensed video content and software. *Polar Bear Productions*, 384 F.3d at 721, (Federal Copyright and state trademark); *Symantec Corp. v. Cd Micro, Inc*., 286 F.Supp.2d 1278, (Copyright infringement, trademark infringement, unfair competition under the Lanham Act, and trademark counterfeiting).

### F.  Slep-Tone Has Suffered Greatly From Piracy

While aspersions against plaintiff may be cast and an oddly irrelevant and unsupported argumentative filing by defendant's own counsel in another matter is submitted, this does not negate the simple truth of this matter.  Defendants are profiting from the use of counterfeits of planitff's products. Defendants' argument might just as well be reclassified as "everyone else is stealing, so why can't we?" The relevance of such an argument has no place in a FRCP 12(b) motion and should either be dismissed or acknowledged as evidence that lacking relevant legal and factual basis for their arguments, defendants now argue that the laws should simply not be enforced.

---

[4] Though this begs the question of how the "goods" marks can be registered for, "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." TMEP §1401.02(b)

As per the pleadings before this court, widespread counterfeiting of Slep-Tone product has contributed to the loss of more than seventy jobs as well as several consecutive years of operating losses.  Complaint ¶ 49.  Parties such as defendants do more than directly harm plaintiff, as they also impact the ability of legitimate purveyors to do business.  Complaint ¶ 52. As to whether plaintiff is attempting to exploit or pursue parties, Slep-Tone aggressively reaches out to venues such as defendants', advertises, and offers its products at very competitive rates. There is a very easy way for parties such as defendants to avoid claims by Slep-Tone: They can either not use counterfeits; or they can agree to purchase licensed product when they are caught. Defendants with notice have refused to purchase licensed products and have instead willfully elected to profit from counterfeits.  When a party willfully both refuses to purchase licensed copies and then proceeds to utilize and openly promote and benefit from counterfeits, Slep-Tone has no choice but to either enforce its rights or face a claim of waiver.

### G.  Plaintiff Should Be Allowed To Amend to Cure Any Defect

FRCP 15 advises the court that "leave shall be freely given [to amend] when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir.2001)(quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The basic facts of plaintiff's claim are: plaintiff's trademarks, registered for use with karaoke and music related goods and services, are being used in association with defendants' presentation of counterfeit/pirate/copies of karaoke tracks for defendants' economic benefit. This is a trademark case.  Should this court now find some previously unknown defect in the

complaint that is well-tested and tried by numerous counsel in this district and nationwide, plaintiff should be allowed leave to amend to cure any such defect.

**IV.    Conclusion**

For the reasons discussed above, and in accord with the prior rulings in this district and over 100 other cases nationwide, plaintiff requests this court deny defendants' motion to dismiss.

Respectfully submitted this 8th day of July, 2014

/s/ Carl D. Crowell
Carl D. Crowell, OSB# 982049
E-Mail: carl@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
503-581-1240
Of attorneys for plaintiff